UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELDRICK E. ROBISON, | No. C-13-2443 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CITY OF SANTA ROSA, *et al.*, | **(Docket No. 14)** |
| Defendants. | |

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Property in dispute is located at 1070 South Wright Road, Santa Rosa, CA.  It is undisputed that, prior to any interest purportedly transferred to Plaintiff, the Property was held in the Roy E. Greathouse Trust Dated July 20, 2006 ("Roy Greathouse Trust" or "Trust"), whose trustee was Roy E. Greathouse.  RJN (Docket No. 16) Exh. 5.  On October 19, 2011, the City held an administrative hearing and found that the Property violated fifteen City code provisions.  Fritsch Decl. (Docket No. 15) Exh. D.  The City issued an Administrative Enforcement Order that assessed against Roy Greathouse administrative fees and costs, and penalties for failure to timely correct the violations.  *Id*.  On January 10, 2012, a Resolution of the City Council confirmed that the total amount of costs and penalties was $40,875, which would be placed as a lien on the Property.  RJN Exh. 2.  On February 7, 2012, the lien was recorded with the Sonoma County Recorder's Office.  RJN Exh. 8.

On January 19, 2012 – after the date of the Resolution but prior to the recording of the lien – Plaintiff recorded with the Sonoma County Recorder's Office a quitclaim deed, purporting to

transfer the Property from *Joseph* Greathouse to Plaintiff for ten dollars. RJN Exh. 6. On March 5, 2012, the Sonoma County Recorder sent Plaintiff a letter stating that they could not process the transfer of title because their records did not show Joseph Greathouse ever acquired the Property. Fritsch Decl. Exh. A; Opp. Exh. 5. On March 20, 2012, Plaintiff recorded a grant deed, as an "amendment/correction" to the prior deed. RJN Exh. 9. The deed transfers the Property from Joseph Greathouse, "successor trustee" of the Roy Greathouse Trust, to Plaintiff. *Id*. Plaintiff signed on behalf of grantor Joseph Greathouse as his "attorney-in-fact." *Id*.

Plaintiff contends Joseph Greathouse became the successor trustee of the Trust upon Roy Greathouse's death and thus had authority to deed the property to Plaintiff. *See* Docket Nos. 53-4, 56. However, the Declaration of Trust, which governs the terms of the Roy Greathouse Trust, designates Roy Greathouse's daughter, Lisa Evane Greathouse, as the successor trustee of the Roy Greathouse Trust. Docket No. 53-3 at 1. It designates Joseph Greathouse as successor trustee only if Lisa Greathouse is "unable or unwilling." *Id*.

Plaintiff alleges that when he went to the City [Hall] on January 25, 2012 to inquire about permits for the Property, the City's Code Enforcement Officers Mark Maystrovich and Michael Reynolds intimidated him. Compl. at 4. They allegedly "yelled" at him stating that the deed Plaintiff had recorded was fraudulent. Compl. at 6. (The complaint first accuses only Reynolds, but later accuses both.) Reynolds allegedly refused to talk to Plaintiff any further. Compl. at 7. About six months later, Reynolds and Maystrovich informed Plaintiff that no permits could be issued before the lien was paid. Compl. at 7-8. Reynolds allegedly instructed the County Tax Collector to place the lien on the tax roll. Compl. at 9. Thus, Plaintiff claims, Maystrovich and Reynolds interfered with his property rights.

Plaintiff filed the Complaint in this suit on May 30, 2013, alleging two causes of action. The first alleges a violation the "Ku Kluk[sic] Klan Act of 1866" by interfering with his property rights and denying Plaintiff equal protection of the law. The second, brought under 42 U.S.C. § 1982, alleges violations of the the Equal Protection Clause, the Due Process Clause, and the Eighth Amendment. Plaintiff claims damages of more than $200,000. Compl. at 4, 11.

On July 16, 2013, Defendants filed a motion to stay the action, on the grounds that this was

1  another "meritless lawsuit designed to harass public employees for having discharged their duties."
2  Mot. at ii. Defendants attached records of the Sonoma County Superior Court, of an unrelated
3  action resulting in the court's declaration that Plaintiff was a vexatious litigant. *See* Fritsch Decl.
4  Exh. B, Tentative Rulings No. 7. In addition, Defendants argued that Plaintiff could not succeed on
5  the merits because Plaintiff did not own any interest in the Property before the lien attached. Mot. at
6  1. Defendants attached documents showing the chain of title to the Property.

7  The Court decided that it would treat the motion to stay as a motion for summary judgment
8  because "Defendants' motion attaches evidence outside the pleadings and argues that Plaintiff's case
9  cannot succeed on the merits." Docket No. 33. The Court gave both parties permission to submit
10 additional evidence in support or opposition to the motion.

11 Defendants did not submit a separate opening brief and submitted no additional evidence.
12 Plaintiff submitted an Opposition, attaching copies of email exchanges with defendant Reynolds, a
13 notice from the Sonoma County Assessor, and documents of public record already in evidence.
14 Docket No. 40. Defendants replied (no evidence attached). Docket No. 42.

15 The Court held a hearing on the motion on October 31, 2013. Docket No. 51. The Court
16 noted that the evidence was insufficient to show that Joseph Greathouse had ever owned the
17 Property or had ever become the trustee of the Roy Greathouse Trust. Taking into consideration that
18 Plaintiff is pro se, the Court granted Plaintiff six additional weeks, until December 12, 2013, to
19 submit such evidence. Defendants had until December 19, 2013 to raise any objections to the
20 evidence.

21 On December 12, 2013, Plaintiff submitted various documents in support of his contention
22 that Joseph Greathouse had become the trustee of the Roy Greathouse Trust. Docket No. 53. On
23 December 18 and 19, 2013, Defendants submitted a response and objections to the evidence.
24 Docket Nos. 54, 55. On December 26, 2013, Plaintiff submitted a further affidavit in support of his
25 contention. Docket No. 56.

26 **II.   DISCUSSION**
27 A.   Legal Standard
28 "The court shall grant summary judgment if the movant shows that there is no genuine

1  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
2  Civ. P. 56.

3  A moving party without the ultimate burden of persuasion at trial has the initial burden of
4  production on a motion for summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*
5  *Inc*. (9th Cir. 2000) 201 F.3d 1099, 1102. "In order to carry its burden of production, the moving
6  party must either produce evidence negating an essential element of the nonmoving party's claim or
7  defense or show that the nonmoving party does not have enough evidence of an essential element to
8  carry its ultimate burden of persuasion at trial." *Id*.

9  If the moving party meets its initial burden of identifying the portions of the materials on file
10 that it believes demonstrate the absence of any genuine dispute as to a material fact, the nonmoving
11 party may not rely on mere allegations in the pleadings in order to preclude summary judgment. *See*
12 *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).
13 Instead, the nonmoving party must set forth, by affidavit or otherwise provided in Rule 56, specific
14 factual allegations revealing a genuine dispute of fact. *Id*. The non-moving party "must produce at
15 least some 'significant probative evidence tending to support the complaint.'" *Id*. (quoting *First*
16 *Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)). A conclusory, self-serving affidavit,
17 lacking detailed facts and any supporting evidence is insufficient to create a genuine issue of
18 material fact." *F.T.C. v. Publishing Clearing House, Inc*., 104 F.3d 1168, 1171 (9th Cir. 1997).

19 B.   Admissibility of Evidence

20 Both parties attached various documents to their briefs in support or opposition to summary
21 judgment. Docket Nos. 14-16, 40. The documents mainly contain public records of the Sonoma
22 County Recorder's Office and the City of Santa Rosa, but also contain communications to Plaintiff
23 from the City's employees and the Sonoma County Recorder-Assessor. Neither party objected to
24 the documents of the other. Thus, the Court admits these documents as evidence.

25 Subsequent to the hearing, Plaintiff submitted five documents in support of his contention
26 that Joseph Greathouse became the trustee of the Roy Greathouse Trust, giving Joseph Greathouse
27 the authority to transfer the Property to Plaintiff. Docket No. 53, 56. The documents consist of an
28 "Affidavit of Death of Trustee" by Plaintiff and an attached death certificate of Roy Greathouse, a

"Notice of Interest" by Plaintiff, a Declaration of Trust by Roy E. Greathouse, a letter to this Court from Plaintiff, and another affidavit by Plaintiff.

The Declaration of Trust ("Declaration") sets out the terms of the Roy Greathouse Trust. Docket No. 53-3. Defendants object to the Declaration on grounds that it lacks foundation as to authenticity, is hearsay, and is irrelevant. The Declaration, however, was acknowledged by a public notary, and therefore, is self-authenticating under Federal Rules of Evidence 902(8). *See* Wright & Miller, 31 Federal Practice and Procedure § 7142 (1st ed.); Civ. Code § 1181. Because Defendants merely state that the Declaration lacks foundation as to authenticity and does not present any rebutting evidence, the Court overrules this objection. The Court also rejects Defendants' objection as to relevance. As will be discussed below, the Declaration, in fact, makes it less probable that Joseph Greathouse had authority to transfer the Property to Plaintiff. The Court also rejects Defendants' hearsay objection. The Declaration is not offered for the truth of the matter asserted, but rather for its legal effect and to show Roy Greathouse's intent in designating his successor trustee and distributing the trust proceeds. *See* FRE 801, 803(3). Thus, the Declaration is admissible.

The Affidavit of Death of Trustee ("Affidavit") is executed by Plaintiff, dated May 16, 2013, and recorded the same day with the Sonoma County Recorder's Office. Docket No. 53-1. It attaches the death certificate of Roy Greathouse; that certificate is admissible, because it is a public record, the authenticity of which Defendants do not dispute.

The Affidavit, however, is problematic. In the Affidavit, Plaintiff declares that Joseph Greathouse is the successor trustee of the Roy Greathouse Trust, and that if no one rebuts the Affidavit within 10 days, the declaration "stands as truth in the Public and Private venues." *Id*. Defendants objects to the Affidavit on the grounds that it lacks foundation as to facts and legal conclusions, is not competent as a declaration under the federal rules, is hearsay, and is irrelevant.

"An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Affidavit fails to conform to Rule 56(c)(4) because nothing indicates it was made on personal knowledge or that Plaintiff is

competent to testify on the identity of the trustee.  Further, Plaintiff cites no legal authority that would permit a trustee to be established by such publication.  In short, the Affidavit does little more than state, without any foundation, the purported ultimate fact that Joseph Greathouse is the successor trustee.  It does not have any operative legal effect.  Thus, the Affidavit is inadmissible.

The Notice of Interest is a statement by Robison that he is the owner of the Property and that the value of his interest is $208,000.  The Notice of Interest is not sworn under penalty of perjury, as required by Rule 56(c)(4).  *See* Fed. R. Civ. P. Advisory Committee's Note.  And, as with the Affidavit, it does little more than conclusorily state the purported ultimate fact that Plaintiff is the owner of the Property.  Thus, the Notice of Interest has no legal operative effect and is inadmissible.

Plaintiff's letter to the Court is inadmissible.  Docket No. 53-4.  It merely tells the Court that Plaintiff learned from two attorneys that Lisa Greathouse abandoned her position as trustee and that Joseph Greathouse became the successor trustee.  This is inadmissible hearsay.  At most, the letter simply asserts Plaintiff's theory of the case.

Finally, Plaintiff's affidavit of December 26, 2013 is inadmissible.  Docket No. 56.  It was submitted after Plaintiff's deadline to submit evidence and Defendants' deadline to respond.  Moreover, it is inadmissible hearsay, as Plaintiff simply attests Lisa Greathouse told him, "I walked away, forfeited my position as Trustee."  Plaintiff submitted no sworn declaration from Lisa Greathouse, the successor trustee designated in the Declaration of Trust.

In summary, among the newly submitted evidence, only the Declaration of Trust and death certificate of Roy Greathouse are admissible.

C.      Ownership of Property

The admissible evidence fails to establish Plaintiff has any ownership rights in the Property.  He thus lacks standing to sue.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("plaintiff must have suffered 'an injury in fact' – an invasion of a legally protected interest").

Plaintiff asserts that he acquired the Property from Joseph Greathouse.  However, there is insufficient evidence that Joseph Greathouse ever owned the Property.  The letter from the Sonoma County Recorder to Plaintiff, dated March 5, 2012, states, "our records show the property [is] currently in the name of Roy E. Greathouse, Trustee of the Roy E. Greathouse Trust.  Search of our

6

records does not show Joseph Greathouse's acquisition of the property, which would subsequently allow him to convey it to you." *See* Fritsch Decl. Exh. A.  Plaintiff does not dispute this evidence.

Plaintiff points to an email from Reynolds, dated February 13, 2012, in which Reynolds states he "sent an email to all patrol sergeants and officers that the property had changed changes." Opp. Exh. 3.  Plaintiff argues that this acknowledges Plaintiff was the owner, but Reynolds's statement cannot affect the ownership of the Property.  Plaintiff also points to a Notice of Supplemental Assessment from the Sonoma County Assessor, dated April 24, 2013.  *See* Opp. Exh. 8.  It indicates the date of change of ownership as January 19, 2012.  However, this merely reflects the deed of January 19, 2012 and the "correction" of March 20, 2012, which Plaintiff recorded with the Sonoma County Recorder's Office.  This is insufficient to create a genuine dispute that Joseph Greathouse ever owned or controlled the Property.

There is no competent evidence that Joseph Greathouse was the successor trustee to the Roy Greathouse Trust.  Plaintiff submits as evidence the "amendment/correction" grant deed, recorded March 20, 2012, which transfers the Property from "Joseph Greathouse Successor Trustee to Roy E. Greathouse Trustee of the Roy E. Greathouse Trust Dated July 20, 2006" to Plaintiff.  RJN Exh. 9; Opp. Exh. 6.  This is little more than a mere assertion by Plaintiff; the fact of recordation adds nothing.  While the recording requirements of the Sonoma County Recorder's Office are not in evidence, county recorders generally only check whether instruments conform on the face of the document with required formalities.  *See* Miller & Starr, California Real Estate § 11:10 (3d ed.). Tellingly, Joseph Greathouse did not sign the March 20 grant deed; Plaintiff signed on his behalf, as his "attorney-in-fact."  *See* RJN Exh. 9.  While an agent may have authority to sign on behalf of the grantor, this fails to establish that Joseph Greathouse was the successor trustee.  And "[r]ecording itself does not grant interest in property, and a void document 'derives no validity from the mere fact it is recorded.'" Miller & Starr § 11:76 (quoting *Taormina Theosophical Community, Inc. v. Silver*, 140 Cal. App. 3d. 964, 971 (1983)).

In fact, the Declaration of Trust, if anything, shows Joseph Greathouse had no such interest in the Property to transfer.  In the Declaration, Roy Greathouse designates his daughter, Lisa Evane Greathouse, as the successor trustee of the Trust.  Docket No. 53-3 at 1.  Joseph Greathouse is

1 designated the successor trustee if Lisa Greathouse is "unable or unwilling to act as successor
2 trustee." There is no admissible evidence that shows Lisa Greathouse was unable or unwilling to so
3 act.

4   Further, in the Declaration, Roy Greathouse directs the successor trustee to distribute the
5 proceeds of the Trust, after the satisfaction of any outstanding debts and expenses, equally among
6 his four children. *Id*. at 4. According to the Sonoma County Assessor, the existing value and the
7 new value of the Property in the tax year 2011-2012 were $78,210 and $120,000, respectively. *See*
8 Opp. Exh. 8. Thus, even if Joseph Greathouse had become the trustee, the evidence shows he had
9 no authority to transfer the Property to Plaintiff as a "gift" or for ten dollars. *See* Opp. Exhs. 1, 6.
10 Any such action would be in contravention of the terms of the trust.

11   Thus, Plaintiff has failed to create a genuine dispute about his lack of ownership of the
12 Property. The only "evidence" that Joseph Greathouse acquired as interest in the Property and then
13 conveyed it to Plaintiff are self-serving documents executed by Plaintiff himself. Not a single
14 document is executed by Lisa Greathouse, the designated trustee or Joseph Greathouse, the
15 successor trustee. These documents and Plaintiff's conduct are suggestive of fraudulent conduct.

16 D.  <u>The Causes of Action</u>

17   Plaintiff's first cause of action alleges a violation of the Ku Klux Klan Act/Civil Rights Act
18 of 1866 by interfering with his property rights and denying Plaintiff equal protection of the law. The
19 sections Plaintiff cites appear to refer to the Civil Rights Act of 1871. Neither Act is current, though
20 portions have been amended and codified in subsequent civil rights legislation, in particular 42
21 U.S.C. § 1983. *Cf. Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The
22 second cause of action, brought under 42 U.S.C. § 1982, alleges violations of the Equal Protection
23 Clause, the Due Process Clause, and the Eighth Amendment. The Court addresses only the second
24 cause of action, as it encompasses the first.

25   Plaintiff alleges that Defendants interfered with his property rights on the basis of race in
26 violation of the Equal Protection Clause. Defendants Maystrovich and Reynolds allegedly "yelled
27 at him stating 'your documents are fraudulent and I do not have to talk to you.'" Compl. at 6.
28 Maystrovich and Reynolds also allegedly took part in recording the lien. Even if the Court assumed

the alleged facts to be true, they do not show Defendants interfered with Plaintiff's property rights on the basis of race.  Not only has Plaintiff failed to establish an ownership interest in the Property, even if he did, the claim is meritless.  Significantly, the City Council resolved to place the lien on the Property *before* Plaintiff claimed any interest in it.  The City Council, therefore, could not have targeted Plaintiff or discriminated against him in placing the lien on the Property.  To the extent that Plaintiff is claiming that Defendants treated him differently on the basis of race independent of his property rights, there is simply no evidence that supports this claim.  Thus, the Court grants summary judgment in favor of Defendants on the Equal Protection claim.

Plaintiff alleges that the procedure through which the lien attached violated his Due Process rights.  However, if the lien attached before Plaintiff acquired any interest in the Property, the procedure through which it attached could not have violated any Due Process right of Plaintiff.  Moreover, since there is insufficient evidence that Plaintiff ever acquired any interest in the Property, Plaintiff lacks standing to allege a Due Process claim.  Thus, the Court grants summary judgment for Defendants on the Due Process claim.

Plaintiff alleges that the lien was excessive in violation of the Eighth Amendment.  Plaintiff can state an Eighth Amendment claim only if he is obligated to pay the lien.  Since there is insufficient evidence in the record that Plaintiff ever owned the Property, whether before or after the lien attached, Plaintiff lacks standing to allege an Eighth Amendment claim.  Thus, the Court grants summary judgment for Defendants on the Eighth Amendment claim.

///
///
///
///
///
///
///
///
///

### III. CONCLUSION

The Court **GRANTS** Defendants' motion for summary judgment on all claims. The Clerk shall enter judgment and close the file.

The absence of evidence that Plaintiff ever owned the Property, coupled with Plaintiff's actions to represent that he did, raise grave concerns that Plaintiff has attempted to commit fraud on the Court. The Court will forward the case for investigation to the United States Attorney for the Northern District of California.

This order disposes of Docket No. 14.

IT IS SO ORDERED.

Dated: February 21, 2014

_____
EDWARD M. CHEN
United States District Judge